UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| CARINA CANAAN and LEVI LANE, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | EP-16-CV-00132-DCG |
| § | |
| CITY OF EL PASO, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of El Paso's ("Defendant") "Rule 12(b)(6) Motion to Dismiss" (ECF No. 6) ("Defendant's Motion to Dismiss") filed on June 6, 2016; therein, Defendant moves to dismiss Plaintiffs Carina Canaan ("Canaan") and Levi Lane's ("Lane") (collectively "Plaintiffs") "Original Complaint" (ECF No. 3) ("Complaint"). The Complaint asserts causes of action under 42 U.S.C. § 1983, alleging that Defendant violated long-standing constitutional law. On June 20, Plaintiffs filed a Response to Defendant's Motion (ECF No. 9) ("Plaintiffs' Response"). On December 9, the Court held a hearing on Defendant's Motion to Dismiss, where the parties, by and through their counsel, presented additional arguments.

Also before the Court is Plaintiffs' "Motion for Leave to File Their First Amended Complaint" (ECF No. 30) ("Plaintiffs' Motion for Leave to Amend") filed on December 30, 2016. Defendant filed a response thereto (ECF No. 31) on January 6, 2017. Plaintiffs followed with a Reply (ECF No. 32) on January 10.

For the reasons that follow, the Court **GRANTS IN PART and DENIES IN PART** Defendant's Motion to Dismiss. Further, the Court **DENIES** Plaintiffs' Motion for Leave to

Amend; however, the Court will allow Plaintiffs to file an amended complaint consistent with this opinion.

## I. BACKGROUND[1]

This case arises from Defendant City of El Paso's allegedly unconstitutional debt collection policies and practices for Class C misdemeanor fines in connection with traffic tickets. Compl. ¶¶ 1–2, ECF No. 3. On April 6, 2006, Defendant promulgated an administrative directive [hereinafter, "25% Upfront Policy"] signed by the then city manager and municipal court clerk that provides:

> In accordance with the model collection program required under Senate Bill 1863, Municipal Court payment plans will carry the following schedule for payment, after completion of the required application:
>
> 25% of the fine is required upfront at the time the payment plan is requested
> 50% is required on the 30th day of the payment plan
> 75% is required on the 60th day of the payment plan
> 100% is required on the 90th day of the payment plan.

Def.'s Mot. to Dismiss at 5, ECF No. 6;[2] *id.*, Ex. A, ECF No. 6-1; *see also* Compl. ¶ 19. Plaintiffs allege that if, before their appearance dates, debtors call Defendant's municipal clerk staff in order to inquire into their options for satisfying their fines, the staff informs them that they must "(1) pay the fines in full; (2) apply for a payment plan by filling out an application and paying 25% of the outstanding fine upfront; or (3) face jail time." Compl. ¶ 25. They aver that the staff systematically fails to inform debtors of any other available options. *Id.* ¶¶ 25, 29.

---

[1] The following facts are derived from Plaintiffs' Complaint. *See* Compl. When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *See Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012); *see also* Part III.A, *infra* ("Facts Outside the Complaint").

[2] Because Defendant has not numbered the pages of its Motion to Dismiss, all citations herein to the Motion refer to the ECF page numbers printed at the top of the pages.

Plaintiffs live at or near the federal poverty level. *Id.* ¶¶ 1, 14, 46. Canaan received more than forty traffic tickets from Defendant since 2007. *Id.* ¶ 40. In total, she owed more than $10,000 in fines. *Id.* She was arrested on two occasions as a result of warrants issued for failing to appear or pay her Class C misdemeanor fines; she was jailed for two days in 2011 and nineteen days in 2013. *Id.* ¶ 41. Prior to her arrest, Defendant's employees repeatedly informed her that her only options were to pay her fines in full, pay 25% to qualify for payment plans, or go to jail. *Id.* ¶ 42. She was not informed that she could assert her indigency or request alternative sentencing that did not require her to pay 25% upfront. *Id.* As a result, Canaan did the only thing she had been led to believe she could, she pled guilty to each charge and went to jail. *Id.* ¶ 43.

Plaintiff Lane received seventeen traffic warrants. Compl. ¶ 48. In total, he owed more than $4,300 in fines. *Id.* In 2014, he was arrested and jailed for twenty-four days for failure to pay those fines. *Id.* ¶ 49. Prior to his arrest, he telephoned Defendant's municipal court clerks on several occasions to inquire about his options to resolve his debt, but Defendant's employees repeatedly informed him that his only options were to pay his fines in full, pay 25% to qualify for a payment plan, or go to jail. *Id.* ¶ 50. Defendant's employees refused to inform Mr. Lane that he might have the option to assert his indigency or request alternative sentencing that did not require him to pay 25% upfront. *Id.* As a result, Lane did the only thing Defendant had led him to believe he could—he pled guilty to each charge and went to jail. *Id.* ¶ 51.

Plaintiffs assert three claims under 42 U.S.C. § 1983 and one under Texas law. *Id.* ¶¶ 53–63. Specifically, under § 1983, Plaintiffs assert claims for: (1) violations of their Fourteenth Amendment Due Process rights; (2) conspiracy to violate Fourteenth Amendment Due Process rights; and (3) violations of their Equal Protection rights. *Id.* ¶¶ 52–61. Plaintiffs also assert a

claim for violations of their Equal Protection rights under the Texas Constitution. *Id.* ¶¶ 62–63. Plaintiffs seek declaratory and injunctive relief, as well as damages and attorneys' fees. *Id.* ¶¶ 64–70.

On June 6, 2016, Defendant filed the instant Motion challenging Plaintiffs' § 1983 claims. Specifically, Defendant argues:

> As a matter of law, the City [of El Paso] cannot be liable under §1983 for a policy of, allegedly, wrongfully jailing criminal defendants based upon discretionary decisions made by elected municipal judges, who are public officers acting in their judicial capacity over whom the City [of El Paso] has no control or influence.

Def.'s Mot. to Dismiss at 2. Plaintiffs filed their Response to Defendant's Motion. Pls.' Resp. The Court held a hearing, where the parties, by and through their respective counsel, presented further arguments regarding Defendant's Motion to Dismiss. *See* Order Setting Hr'g, ECF No. 22; Mins. of Civil Proceedings, ECF No. 28.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion, a court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *See Gines*, 699 F.3d at 816. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court's task, then, is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of

success." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (*en banc*) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. *Facts Outside the Complaint*

As a preliminary matter, the Court first addresses what facts and evidence are properly before the Court on a Rule 12(b)(6) motion. "It is well-established that, in deciding whether to grant a motion to dismiss, a district court may not 'go outside the complaint.'" *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009) (*per curiam*) (unpublished) (quoting *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). There is generally only one recognized exception to that rule: "[a] district court may consider documents attached to the motion to dismiss *if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim*." *Id.* (emphasis added).

Defendant has attached numerous documents to its Motion that are not referenced in the Complaint. Among these are a municipal court standing order that allegedly supersedes the 25% Upfront Policy, copies of commitment orders, and judicial dockets. *See, e.g.*, Def.'s Mot. to Dismiss, Ex. B, ECF No. 6-1. Plaintiffs argue that their pleadings "make no mention of these documents, and to consider them on this Motion to Dismiss would require the Court to consider facts not included in the pleadings." Pls.' Resp. at 7. The Court agrees. Documents not referred to in the complaint cannot be considered, and, therefore, the Court disregards these documents for purposes of the Rule 12(b)(6) Motion. However, the administrative directive detailing the 25% Upfront Policy, *see* Def.'s Mot. to Dismiss, Ex. A, is referenced in the Complaint and central to Plaintiffs' claim, and therefore falls within the exception to the general rule prohibiting

the Court from considering documents attached to the Motion. *See Rodriguez*, 310 F. App'x at 626.

### B. *Plaintiffs' § 1983 Claims*

"To state a claim under 42 U.S.C. § 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005); *see also Doe ex rel. Magee*, 675 F.3d at 866–67 ("We have stated time and again that without an underlying constitutional violation, an essential element of municipal liability is missing." (internal quotation marks, brackets, and citation omitted)). As we will see, with respect to their federal due process claims, Plaintiffs have failed to allege the violation of a constitutional right actionable under § 1983.

The Complaint generally alleges that Defendant's 25% Upfront Policy disregards "long-standing constitutional law" that "a municipality cannot jail poor debtors merely because they are unable to pay criminal fees or fines," Compl. ¶ 3, and that "the practical effect of the 25% Upfront Policy is to automatically convert Class C misdemeanor fines into jail time," *id.* ¶ 4. *See also* Pls.' Resp. at 13 ("It is not only judges within the scope of their authority, but the government with its enactments, that must offer due process in order to avoid imprisoning indigent debtors for nonpayment of fines." (citing *Tate v. Short*, 401 U.S. 395, 399–400 (1971))).

As these allegations facially relate to a line of decisions where the Supreme Court provided guidance on what constitutional dictates are implicated when a court sentences an indigent defendant to imprisonment for failure to pay a fine—the Court pauses to briefly discuss them. They are: *Williams v. Illinois*, 399 U.S. 235 (1970), *Tate*, 401 U.S. 395, and *Bearden v. Georgia*, 461 U.S. 660 (1983). Under *Williams*, "[a] sentencing court cannot constitutionally

enhance the jail sentence of an indigent person beyond the statutory maximum because he cannot afford to pay a fine." *United States v. Altamirano*, 11 F.3d 52, 53 (5th Cir. 1993) (citing *Williams*, 399 U.S. at 242-43)). "*Williams* was followed and extended in *Tate*," *Bearden*, 461 U.S. at 664, where the Court held that "a state cannot convert a fine imposed under a fine-only statute into a jail term solely because the defendant cannot pay," *Altamirano*, 11 F.3d at 53 (citing *Tate*, 401 U.S. at 399). The rule of *Williams* and *Tate* is, therefore, that "if the State determines a fine . . . to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Bearden*, 461 U.S. at 667–68. "[T]he Court expanded this principle in *Bearden*," holding that a "court cannot revoke probation for failure to pay a fine unless it finds that probationer willfully refused to pay, that probationer did not make sufficient bona fide efforts legally to acquire adequate financial resources, or that another sanction would not serve the state's interests in punishment and deterrence." *Altamirano*, 11 F.3d at 53 (citing *Bearden*, 461 U.S. at 672).

These decisions impose a constitutional duty on *a sentencing judge* to inquire into a defendant's indigency before imprisoning him for failure to pay a fine. *See United States v. Scales*, 639 F. App'x 233, 240 (5th Cir. 2016) (*per curiam*) (unpublished) (*Bearden* "require[s] a court to 'inquire into the reasons for the failure to pay' before revoking probation." (quoting *United States v. Payan*, 992 F.2d 1387, 1396 (5th Cir. 1993))); *Gipson v. Texas*, 383 S.W.3d 152, 156 (Tex. Crim. App. 2012) ("*Bearden* . . . sets forth a *mandatory judicial directive* that requires a trial court to (1) inquire as to a defendant's ability to pay and (2) consider alternatives to imprisonment if it finds that a defendant is unable to pay." (emphasis added)).[3]

---

[3] *See also De Luna v. Hidalgo Cty.*, 853 F. Supp. 2d 623, 641, 648 (S.D. Tex. 2012) (analyzing *Williams*, *Tate*, and *Bearden* to state that "the absence of any inquiry into a defendant's indigency unless the defendant 'raises' it of his or her own accord does not provide the process due" and finding "the JPs/Magistrates, before issuing . . . a Class C commitment order, do not consider whether the defendant

Moreover, in response to these decisions,[4] Texas Legislature amended various provisions of the Texas Code of Criminal Procedure, *inter alia*, to require sentencing judges to inquire into a defendant's indigency before sentencing him to jail for defaulting in the discharge of a judgment.[5] *See Burton v. Goodlett*, 480 F.2d 983, 985 (5th Cir. 1973) ("We were interested to see what the Texas Court of Criminal Appeals did with Tate's case when it came back on remand. That Court pointed out that the Texas Legislature had provided 'alternative means' for the collection of fines and costs from indigents subject to such penalties." (citing *Ex parte Tate*, 471 S.W.2d 404 (Tex. Crim. App. 1971) (citing, among others, the statute now renumbered as Tex. Code Crim. P. 45.046))); *De Luna*, 853 F. Supp. 2d at 644 ("[I]t is clear that this provision was a response to the Supreme Court's decision in *Tate*. Further, it tracks the constitutional requirements enunciated in *Bearden*.").

Turning to the parties' specific arguments here, the Court observes that in its Motion to Dismiss, Defendant does not individually address each claim (*i.e.*, federal due process claim; federal due process conspiracy claim; federal equal protection claim; and Texas equal protection

---

can pay the fines or whether the defendant has made a good faith effort to satisfy them, or offer alternative sentencing, unless the defendant directly raises his or her inability to pay with the JP and/or arraigning Magistrate").

[4] *See, e.g., Tate*, 401 U.S. at 400–01 ("It is unnecessary for us to canvass the numerous alternatives to which *the State by legislative enactment*—or judges within the scope of their authority—may resort in order to avoid imprisoning an indigent beyond the statutory maximum for involuntary nonpayment of a fine or court costs. Appellant has suggested several plans, some of which are already utilized in some States, while others resemble those proposed by various studies. The State is free to choose from among the variety of solutions already proposed and, of course, it may devise new ones." (quoting *Williams*, 399 U.S. at 244–45) (emphasis added)).

[5] *See* Tex. Code Crim. P. Art. 45.046(a) ("When a judgment and sentence have been entered against a defendant and the defendant defaults in the discharge of the judgment, the judge may order the defendant confined in jail until discharged by law *if the judge at a hearing makes a written determination* that: (1) the defendant is not indigent and has failed to make a good faith effort to discharge the fine and costs; or (2) the defendant is indigent and: (A) has failed to make a good faith effort to discharge the fines and costs under Article 45.049; and (B) could have discharged the fines and costs under Article 45.049 without experiencing any undue hardship." (emphasis added)).

claim) asserted in the Complaint, nor does it challenge the sufficiency of Plaintiffs' factual allegations for each claim. Instead, Defendant broadly argues that "[a]s a matter of law, the City [of El Paso] cannot be liable under §1983," Def. Mot. to Dismiss at 2, and seeks dismissal on that basis. Plaintiffs, on the other hand, primarily address their federal due process claims, but not their equal protection claims. *See Pls.* Resp. at 10–11. Accordingly, for purposes of Defendant's Motion to Dismiss, the Court will address only Plaintiffs' federal due process claims[6]—*i.e.*, "violations of the right to due process under the federal Constitution. 42 U.S.C. § 1983," Compl. ¶¶ 52–55, and "conspiracy to violate the right to due process under the federal Constitution," *id.* ¶¶ 56–57—but not the remaining claims.

Defendant characterizes Plaintiffs' constitutional claims as "solely concern[ing] jailing," Def.'s Mot. to Dismiss at 11, and argues that Plaintiffs have "failed to show that their incarceration was in any way related to the [25% Upfront Policy]," *id.* at 15. Pointing to Texas Code of Criminal Procedure 45.046, Defendant contends that Plaintiffs were jailed "either because the municipal judge found that they were not indigent (and failed to note the same on the docket sheets). Or, they were jailed without the municipal judge holding an indigent status hearing, in violation of state law." *Id.* at 5–6. "Either way," Defendant posits, "no § 1983 liability was created for the City," because "all relevant decisions [regarding incarceration] were made by a municipal judge acting in his judicial capacity." *Id.* at 6, 15.[7]

---

[6] Further, both federal due process claims are based on the same alleged constitutional violation. *Compare* Compl. ¶ 54 ("Defendant offered Plaintiffs no other option than to either pay in full or go to jail. This is a violation of the Due Process Clause of the Fourteenth Amendment."), *with id.* ¶ 56 ("Specifically, Defendant and its employees and/ or agents have agreed to intentionally refuse to inform low-income debtors of their rights, and to intentionally refuse to properly inquire into a debtors' financial inability to pay their fines and/ or the debtors' reasons for failing to pay.").

[7] *See Whisenant v. City of Haltom City*, 106 F. App'x 915, 917 (5th Cir. 2004) (*per curiam*) (unpublished) ("The City cannot be liable under § 1983 for having a 'policy' of wrongfully incarcerating

Plaintiffs respond that their claims are not "related to any judicial action or inaction," Pls.' Resp. at 9, and that "as pleaded in the Complaint, the conduct underlying Plaintiffs' claims occurs long before involvement by any judge," *id.* at 6; *see also id.* at 5 ("Plaintiffs have made no allegations of misconduct on the part of any El Paso municipal court judge. In fact, the word "judge" does not even appear in Plaintiffs' Complaint."). The Complaint pleads that:

> If, prior to their appearance dates, debtors call Defendant's municipal clerk staff in order to inquire into their options for satisfying their fines, Defendant's court staff informs them that they must either: (1) pay the fines in full; (2) apply for a payment plan by filling out an application and paying 25% of their outstanding fines upfront; or (3) face jail time.

Compl. ¶ 25. But "Defendant's employees refused to inform [Plaintiffs] that [they] might have the option to assert her indigency or request alternative sentencing that did not require [them] to pay 25% upfront." *Id.* ¶¶ 42, 50; *see also id.* ¶ 29 ("Defendant's municipal court staff . . . systematically fails to inform debtors of any alternatives."); *id.* ¶ 22 ("fail to provide other information or options apart from jail"); *id.* ¶ 3 ("to ask for a determination of indigency"); *id.* ¶ 54 ("a determination of a debtors' indigency"). Plaintiffs allege that this refusal by Defendant's employees or municipal clerk staff to further inform Plaintiffs violated their due process rights. *Id.* ¶ 3 ("Before imposing a jail sentence, the government must provide debtors with both notice and opportunity either to ask for a determination of indigency, excusing them from repayment, or to select an alternative option like community service or a reasonable payment plan. Defendant's 25% Upfront Policy disregards these well-established protections.").

Thus, Plaintiffs' alleged constitutional violation rests on the legal theory that prior to their court appearance (*i.e.*, pre-appearance/pre-trial), Defendant had a constitutional duty to inform Plaintiffs (and reciprocally, Plaintiffs had a constitutional right to be informed by Defendant) that

---

indigent defendants because the relevant decisions were made by a municipal judge acting in his judicial capacity.").

they had alternative options, in particular, an indigency determination. *See* Pls.' Resp. at 14 ("At the core of the Complaint is their claim that El Paso – through its 25% Upfront Policy and the misinformation provided by its nonjudicial employees – deprived them of proper notice before they would ever reach a judge that they have a right to raise their inability to pay and offer relevant financial information."); Hr'g Tr. at 28:22–29:2 ("what this complaint is alleging is . . . about the city['s] active steps. And as the claim says, the city takes intentional action to . . . refuse to inform the plaintiffs of any other option outside the 25 percent policy."); *id.* at 32:23–33:1 ("The violation is the plaintiff not having adequate information prior to his hearing to assert the ability to pay . . . in a proper manner.").

The Court's research revealed no authority—binding or otherwise—that imposes such a constitutional duty on a city. Plaintiffs, however, argue that *Turner v. Rogers*, 564 U.S. 431 (2011), supports their legal theory. Pls.' Resp. at 14; *see also* Hr'g Tr. 33:23–39:18 (counsel's colloquy regarding *Turner*). In *Turner*, at a contempt hearing before a state court, Turner was found to be in contempt of court and was sentenced to twelve months' incarceration for failing to comply with a child support order; he did not receive counsel at the hearing. 564 U.S. at 436–38. The question before the Court was whether the Fourteenth Amendment's Due Process Clause requires a State to provide counsel at a civil contempt hearing to an indigent noncustodial parent "potentially faced with such incarceration" for failing to comply with a child support order. *Turner*, 564 U.S. at 435, 441. The Court answered:

> We consequently hold that the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year). In particular, that Clause does not require the provision of counsel where the opposing parent or other custodian (to whom support funds are owed) is not represented by counsel and *the State provides alternative procedural safeguards equivalent to those we have mentioned (adequate notice of the*

> *importance of ability to pay, fair opportunity to present, and to dispute, relevant information, and court findings).*

*Id.* at 448 (second emphasis added).

The Court is unpersuaded that *Turner* supports Plaintiffs' legal theory. *Turner* involved an indigent's right to counsel in a civil contempt hearing for failure to pay court-ordered child support, and the Court there took care to limit the scope of its holding to the facts of the case. *See* 564 U.S. at 442 ("We must decide whether the Due Process Clause grants an indigent defendant, *such as Turner, a right to state-appointed counsel at a civil contempt proceeding*, which may lead to his incarceration." (emphasis added)), at 444 ("We here consider an indigent's right to paid counsel *at such a contempt proceeding*." (emphasis added)).[8] Plaintiffs do not cite any authority, and the Court finds none, that has interpreted *Turner* to require a governmental entity, such as a city, to give notice of the importance of ability to pay before a court, sitting in a criminal case, may incarcerate a defendant for failure to pay a fine or restitution.[9] Moreover, courts have declined to apply or extend *Turner* to factual circumstances beyond those in *Turner*. *See, e.g., Jones v. Buckner*, 963 F. Supp. 2d 1267, 1278–79 (N.D. Ala. 2013) ("*Turner* dealt with a civil contempt hearing, whereas this case deals with a paternity adjudication."); *Gordy v. Gordy*, Civ. A. No. CV612-059, 2012 WL 3912790, at *1 (S.D. Ga. Aug. 21, 2012) ("*Turner*, which was not even a § 1983 action, does not assist him. . . . *Turner* supplies no foundational support for [the plaintiff's] § 1983 action here."), *report and recommendation adopted*, 2012 WL

---

[8] *See also Turner*, 564 U.S. at 449 ("We do not address civil contempt proceedings where the underlying child support payment is owed to the State, for example, for reimbursement of welfare funds paid to the parent with custody. Those proceedings more closely resemble debt-collection proceedings. The government is likely to have counsel or some other competent representative. And this kind of proceeding is not before us. Neither do we address what due process requires in an unusually complex case where a defendant can fairly be represented only by a trained advocate." (internal quotation marks and citations omitted)).

[9] At the hearing, Plaintiffs argued that *De Luna* supports their legal theory. *See* Hr'g Tr. 29:22–30:02, 30:12–19. The Court has examined that case, but found no such support.

3911880 (S.D. Ga. Sept. 6, 2012); *Castanias v. Lipton*, Civ. A. No. 11-296-HJW-JGW, 2012 WL 1391921, at *6 (S.D. Ohio Apr. 20, 2012) ("*Turner* is also factually distinguishable from this case because it was an appeal from a finding of contempt, not a separate § 1983 action. It is questionable, therefore, whether *Turner* may properly provide the foundation for a § 1983 claim."), *report and recommendation adopted*, 2012 WL 4006420 (S.D. Ohio Sept. 12, 2012); *Harris v. Corbett*, Civ. A. No. 12-01, 2014 WL 580150, at *7 (W.D. Pa. Feb. 12, 2014) (dismissing plaintiff's § 1983 claim based on allegation that his due process rights were violated when he was not appointed counsel to represent him at his contempt proceeding (citing *Turner*)); *Norman v. Greenwood Cty. Sheriff Office*, Civ. A. No. 8:13-1245-TMC, 2013 WL 5439175, at *1 (D.S.C. Sept. 27, 2013) (dismissing §1983 claim based on allegation that plaintiff had a due process right to be represented by a counsel in a civil contempt proceeding before a state family court (citing *Turner*)).

Consequently, the Court finds that, with respect to their federal due process claims, *see* Compl. ¶¶ 52–57, Plaintiffs' Complaint does not allege a constitutional violation actionable under § 1983, and therefore Plaintiffs' § 1983 claims fail to state a claim upon which relief can be granted. Accordingly, Plaintiffs' § 1983 must be dismissed. *See Doe ex rel. Magee*, 675 F.3d at 852–53, 855, 869 (finding that plaintiff failed to allege the violation of a constitutional right because defendant, a public school, had no constitutional duty to do that which defendant allegedly failed to do and on that basis, affirming lower court's dismissal of her suit under § 1983); *Kinzie v. Dallas Cty. Hosp. Dist.*, 106 F. App'x 192, 194–95 (5th Cir. 2003) (*per curiam*) (unpublished) (affirming lower court's dismissal of plaintiff's § 1983 complaint, stating "[plaintiff] also argues that he alleged that [defendant's] established policy of inadequate training and supervision and its customs caused violations of his constitutional rights. However, those

arguments deal with whether [defendant] is liable, which is immaterial because no constitutional violations occurred").

### B. *Plaintiffs' Remaining Claims*

As noted above, Plaintiffs also assert a § 1983 claim violations of their Equal Protection rights under the federal Constitution and a claim for violations of their Equal Protection rights under the Texas Constitution. Compl. ¶¶ 58–63. Because Defendant's Motion to Dismiss does not specifically address these claims, the Court will let these claims stand and survive the Motion.

### C. *Plaintiffs' Motion for Leave to Amend Complaint*

The Court has reviewed Plaintiffs' proposed "First Amended Complaint" (ECF No. 30-1). With respect to their federal due process claims, the proposed amended complaint fails to cure the above-discussed deficiency of the original Complaint, as the amended complaint makes plain that Plaintiffs primarily rely on *Turner*. *Cf.* Pls.' Reply to Def's Resp. to Mot for Leave to Amend at 3–5 (arguing that "Plaintiffs' reliance on *Turner v. Rogers* is not futile"), ECF No. 32. Therefore, granting Plaintiffs leave to amend would be futile. Accordingly, the Court denies Plaintiffs' Motion for Leave to Amend as to Plaintiffs' federal due process claims. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile. . . . [W]e . . . apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." (internal quotation marks and citations omitted)).

However, it appears that in the proposed amended complaint, for their federal equal protection claims, Plaintiffs allege additional facts not found in their original Complaint. Further, with respect to their state law claims, Plaintiffs retitled their claim to add due process violation under the Texas constitution. *Compare* Compl. at 10 ("IV. Violations of the Right to

Equal Protection Under the Texas Constitution"), *with* First Am. Compl. at 18 ("IV. Violations of the Right to Due Process and Equal Protection Under the Texas Constitution"). Accordingly, the Court will permit Plaintiffs to file an amended complaint for these two claims only.

### IV. CONCLUSION

For the forgoing reasons, with respect to Plaintiffs' federal due process claims, the Complaint fails to state a claim under § 1983.

Accordingly, **IT IS HEREBY ORDERED** that Defendant City of El Paso's Motion to Dismiss (ECF No. 6) is **GRANTED IN PART and DENIED IN PART**. Specifically, the Motion is **GRANTED** as to Plaintiffs' § 1983 claims for "violations of the right to due process under the federal Constitution," and "conspiracy to violate the right to due process under the federal Constitution," which are **DISMISSED WITH PREJUDICE,** and the Motion is **DENIED** as to Plaintiffs' § 1983 claim for violation of their Equal Protection rights under the federal Constitution and state law claim for violation of their Equal Protection rights under the Texas Constitution.

**IT IS FURTHER ORDERED** that Plaintiffs' "Motion for Leave to File Their First Amended Complaint" (ECF No. 30) is **DENIED.**

**IT IS FINALLY ORDERED** that Plaintiffs MAY FILE by January 20, 2017, an amended complaint consistent with this Memorandum Opinion and Order to assert their equal protection claims as contained in their proposed amended complaint (ECF No. 30-1).

So ORDERED and SIGNED this 12th day of January 2017.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE